So we'll hear the case of Ali Rezak et al. versus Uber Technologies and you can help me with the pronunciation Jeegan or whatever. Proceed please. Here's Mr. Keller. Good morning your honors and may it please the court. Ashley Keller on behalf of the appellants. I'd like to reserve four minutes of my time for rebuttal please. Granted. The district court's decision should be reversed for three reasons that I'd like to state briefly at the outset if I may. First the decision below reads more like findings of fact and conclusions of law as opposed to an order granting summary judgment pursuant to rule 56. To provide just one illustration of this look at what the district court said on the six Donovan factor on whether Uber drivers are integral to the business. This is in the record at 41. Quote the court finds that this factor tends to support the plaintiff's burden of proof that they are employees but only to a slight degree. Let me interrupt you there at that point Mr. Keller because you know this is something that we experience on the Court of Appeals sometimes as well. The use of the word finds when what we really mean is conclude and district judges do it as well but I understand from your point of view it can be a bit misleading especially when we're in the context of a motion for summary judgment. To the important point though whether or not plaintiff's status is that of employer or independent contractor is a legal conclusion is it not? It's a mixed question of law and factor honor this is what the Sixth Circuit said in Keller and that's what I believe this court said in Dyer. It's still subject to the same standard of review though by us. I think mixed questions of law and fact go to juries all the time your honor again the Sixth Circuit said so. The fact questions do. Correct your honor and each of the Donovan factors pursuant to Dial America is a question of fact and so. Means you would never have summary judgment you know when when factors are presented that doesn't make sense. I wouldn't say that you would never have summary judgment your honor if no reasonable jury could reach the conclusion that a driver is an employee or that a driver is an independent contractor. There are lots of situations in the law where your statement seemed to be firm and unequivocal. My statement is firm and unequivocal and this court said so in Dial America that each of the Donovan factors are questions of fact for the trier of fact if reasonably disputed and respectfully Judge Smith I don't. There's nothing different or that go into any one or all of the six factors involved disputed issues of material fact and as in any other case we're talking about something that ought not to be subject to a grant of summary judgment right. If I understand your honors question correctly I believe the answer is yes but I want to make an important clarification and tie it back in for the language that I just quoted from the district court. Even if the historical facts are not disputed inferences can still be drawn from those facts and that is the classic prerogative of the jury. Look at what the district court said here. We're taught you're talking very abstractly though when you say that I mean I think we need to talk specific. You would agree wouldn't you that we need to look at disputes of material fact or the lack thereof with respect to each of those factors individually right. Each of the six factors. Absolutely your honor and I would agree with that. And then it would be for the district court to weigh if you will and and that's what is required with a multi-factor test even if the court cannot and should not be making factual determinations. It does have to to reach the legal conclusion right. There are two components to your honors question. Let me answer the uncontroversial part. I think it is undisputed that the Donovan factors are questions of fact. That's what this court said in Title America and so if there's a reasonable dispute about historical fact or the inferences that can be drawn from those historical facts that has to go to a jury. The second component of your honors question is whether once the jury comes back and says here are the six Donovan factors we find these three this way or these three that way and how strongly we find them for one party or another. Does the district court then as a matter of law weigh the factors. I would submit to your honor that the answer is no. Mixed questions of law and fact go to juries all the time under the Seventh Amendment. Judge Easterbrook's concurrence and Lawrenson points this out. The Sixth Circuit and Keller pointed it out. But you don't need to get to that more controversial part of my answer your honor to resolve this dispute because on the six Donovan factors which again are indisputably questions of fact the district court here took it upon itself not through sloppy language but through what the district court actually did to resolve the factual questions and again I'd like to return to the language of the district court's order with respect to the six Donovan factors. Why don't you help us? I'm not interested in that language at the moment. Very good your honor. Why don't you help us and tell me on let's just pick a factor control right give me your best example of a genuine dispute as to a material fact. Your honor that the dispute as to material fact is which way the control factor cuts and how substantially it cuts in favor of one party or another. Here are the factors. Then if that's the case if substantiality is the question then the answer of a few the answer to Judge Greenaway's question of a few minutes ago is yes every case has got to go to a jury right? I don't think that every case has to go to a jury because you why not if the why not if substantiality is in and of itself a factual question. Because under Celotax your honor a court is permitted to say as a matter of law sometimes that no reasonable jury could look at the historical facts and draw an inference that it cuts for one party or another. But the opposite extreme is also possible if we want to go to logical conclusions. The position of my able opponents would be that no case should ever go to a jury because the Donovan factors often do not involve disputes as to historical fact but they do involve disputes as to what inferences to draw. Let's look at control to return to Judge Greenaway's question. On the question of control here are the facts that Uber has and we agree that Uber should be allowed to present these to a jury. We're not asking the court to reverse and render. We're simply asking for the trier-of-fact to be impaneled. Uber points to its contract that disavows an employee-employer relationship. Well that can't be dispositive under Dial America. Uber notes that drivers have the flexibility to log into the app whenever they want. They don't have to ask permission to take vacation time. Also true in Dial America but Uber is free to present that to a jury. Let's look at the countervailing facts. Uber sets the price of rides. There's no dispute about that. This court in Martin said that the ability to set the price is itself a significant indication of control and again your sister circuit and persuasive authority in Keller said the same thing. Uber doesn't just set the price of rides. It unilaterally and in real time changes the price based on proprietary algorithms that Uber doesn't share with its drivers. That leads me to what for me anyway is the elephant in the room. We have a contract here. What do we make of that and and can you help me to understand the import of that contract because unless I've missed it certainly none of this court's jurisprudence nor the other cases I've looked at help me with just how the existence of that contract as well as its terms factor into our analysis here as we are bound to apply it under Dial America and the six factors. Of course your honor I'd like to be of as much assistance as I can be but I'm constrained by the same jurisprudence that you're reading which essentially says that contract language and terms are relevant but they're not dispositive. That doesn't help us though. I mean I've gone round and round myself on this trying to figure out I know I know that's what courts have said but it doesn't help in the equation as you consider that factor along with the six explicit factors of Dial America. This is the reason I don't think I can be more helpful your honor because the Donovan factors are geared around a question that is also a question of fact. What is true as a matter of economic reality? If you look at the agreement there's no way that a signer, a signatory of that agreement can come away thinking that there is an employer employee relationship. It doesn't matter what they think your honor respectfully. The FLSA is not designed to implement contracts. It's often designed to thwart them. If people could just put clear contractual language in their employment agreement saying that we're disavowing an employee. The point isn't whether it's dispositive right? The point is what factor does it play in the consideration? I totally agree your honor. Uber is entitled to present this to the trier of fact. We are not disputing that there is relevance to the contractual language but look at all of the other facts. Here's what I don't understand about your explanation here. If I understand you correctly you're essentially saying when there when there is a factor test presented by a court of appeals or other other court there is always going to be a genuine dispute because there are always going to be arguments that are presented that may be presented that are somewhat persuasive on either side and when that circumstance happens then we have to go to a jury and what I haven't heard in your disposition of explaining what is a genuine dispute as to material fact is here's what a jury has to determine and here's why you know help us there are four factors if I have read the district courts carefully enough that it has said in order to the benefit of your adversary. Talk about those four factors. I'm happy to your honor so let me continue with respect to control because I think there are additional facts that your honor should consider that would demonstrate that this is the sort of case that you go to a jury. I'm not committing to the position at all that every case should go to a jury. Sell a text can apply in clear-cut cases but this is not such a case. So in addition to setting the price and unilaterally changing the price Uber tells these drivers where they can drive and turns them off if they drive outside of a particular territory and perhaps most important of all Uber collects payment from the rider. Uber unilaterally resolves all disputes and issues refunds the drivers have no recourse if Uber chooses to do that. If I had my phone on I would show you directly how that happens and you could take judicial notice of it and and then Uber this is extremely important. Uber doesn't tell the drivers where they're going or how much money they're gonna make from a ride until the driver is already on location the riders in the car and the driver clicks the begin trip button. Uber likes to analogize itself when it talks about the control factor to the yellow pages. It says it's just the yellow. So the control factor is to Uber's benefit in your detriment because the drivers can't say you know I don't want to go to that part of town? That's correct your honor that's a significant amount of control for a transportation company. Again think about the yellow pages when you let your fingers do the walking. I don't understand that necessarily because if you were just a regular taxi there are controls that the Taxi Commission has over you whether it's Philadelphia, New York, etc. You're not able to say I won't do that. That's illegal. So I'm not sure why that and I'm not sure to your detriment and their benefit in thinking about control. Well your honor I'm not trying to suggest that taxis are employees of the Regulatory Commission but the difference here is Uber controls where the drivers go precisely for their benefit. They're not implementing these contractual formalities just because they have some public policy minded reason like a Regulatory Commission. This is all designed to maximize Uber's way is fine. We think that may well be the most efficient way for Uber to run its business. It may be the most efficient way to provide service to customers. We're not criticizing Uber for having this business model but if it's going to choose to wield this level of control then it has to treat the people that it's controlling as employees or at least this factor could reasonably be construed. I'll continue of course your honor. Please finish your sentence. I saw the red tradition of being colorblind on this court when it comes to the light. That's a venerable tradition your honor and I'll try to honor that. Do not be deterred. So if you would please finish your answer and I'll be happy to ask you something right after. Of course I'm merely saying that I have immense respect for the way that Uber chooses to run its business but the control prong to the extent they're wielding this control not the way a Regulatory Commission does. They don't care about public policy. They care about their business and so when these controls are implemented against the drivers for the purpose of benefiting Uber and Uber's customers that's a factor that a reasonable jury could say cuts in favor of employee status. Help me on this. In the appellee's brief they spend quite a bit of time talking about the the reality of the self-incorporation of the three named plaintiffs right. So I understand that there are different levels and degrees apparently of success and size as among the three. Let's make it easy and let's just talk about Razak. Correct pronunciation? That's easier for them but of course your honor I'm happy to talk about Mr. Razak. Okay it's easier for me. Let's put it that way. Very good. Razak and Lux right. So how are we to think about that right because it would appear that your argument is Razak as a driver doesn't make that much and is you know caught in the box that Uber puts it in right. Correct. Now and then Lux is you know the business reality the business created by he and his brother as I understand it in which there are helpers. Which I find funny but never mind. There are there are helpers who are drivers. They have the lease agreement and so forth that creates revenue expenses etc. It seems to someone looking from the outside that this is a Uber while you know somewhere on the fringe is really not an integral part of the business because I know that Razak relies on the lease agreement and I have the lease with the helpers and that's really all all I have but you know when you pierce through all of it it sounds like the helpers are the ones who have a relationship with Uber and not principally Razak. So help me understand that from your perspective. There's a lot to unpack there your honor. Let me start where you concluded about the helpers having to interact with Uber. That is precisely right and the Sixth Circuit in Keller and the Eleventh Circuit in Scantlin said that under this factor which is in the investment factor do the do the employees or the putative employees make an investment. That's where the helpers prong comes into play. Both your your colleagues in the Sixth Circuit and the Eleventh Circuit said that when the supposed helpers have to be subject to the same terms and conditions that are imposed by the putative employer that doesn't cut in favor of independence. So I want to start with that. Second I will answer those cases the putative employer as you refer to them would be the same person as Mr. Razak. No that would be Uber to analogize to the Eleventh Circuit and the Sixth Circuit. So those were cases that involved satellite and cable installers and it's the satellite company and the terms and conditions the same controls that we previously talked about on the drivers that Mr. Razak brings on as supposed helpers. And the reason that that makes sense your honors is those helpers are not being brought on by Mr. Razak so that Mr. Razak can impart his great managerial skill having built this independent company on those helpers so that those helpers can maximize his returns. They're simply simply people that he's bringing on to sign leases so that they can go drive for Uber too. There's another important aspect of it. Let's stick right there. I mean that's a business enterprise. I don't understand why we should ascribe employer status to Uber when Mr. Razak has you know through hard work etc you know has essentially built a business that is not dependent on on on Uber because here's here's the problem that I have when I look at this this model either Mr. Razak his brother and all of the helpers are are quote unquote employees of Uber or none of them are. They're all employees of Uber I would suggest. All of them. To the extent that they look like Mr. Razak yes let's look at the factual record here. In 2015 12% of Mr. Razak's gross receipts came from sources other than Uber. In 2016 2% of his gross receipts came from sources other than Uber. This is a man who toils long hard hours generating the overwhelming majority. I don't understand that. Isn't isn't isn't that just the vagaries of business? Because as I understand the record and help me if I'm wrong he has a really he and the business entity if you will have a relationship with BlackLane they have a relationship with Lyft and they also provide private services so they've made a business decision that Uber is the best way for them to make money. Well your honor the cases make clear that the Donovan factors have to be viewed through the prism of economic reality and so what matters is not what the drivers could do but what they actually do. Okay so if the Razak facts were 98% of his revenue comes from something other than Uber you couldn't make the same argument. Absolutely you're right your honor. Think of it think of a archetypal independent contractor an electrician or a plumber that you would find actually through the yellow pages which wouldn't control the price and wouldn't tell the electrician where to go and wouldn't issue refunds on behalf of customers. An electrician comes to your house performs a single job or a plumber comes to your house unclogs a drain and leaves and yes you pay him for that service but he has lots of independent sources of income and so when you're looking at this factor it is absolutely relevant that Mr. Razak derives 98% of his income from Uber as opposed to the inverse of that which is only 2% of his income from Uber. Let's let's allow Judge Porter to get in here. No it's alright I've been monopolizing things myself. Well by 2017 it appears that Mr. Razak was doing over a hundred trips and was receiving about $11,000 a month from BlackLane. Why should Uber be penalized for his business decision in 2015 and 16 not to use BlackLane or to use BlackLane? He's got an array of leads that he could choose from. It's not that he should be it's not that Uber should be penalized your honor. It's a question of what we should do based on this factual record to determine whether these drivers are dependent or independent of Uber and I know that we're talking about Mr. Razak and I'm happy to continue doing so but I do want to note it's not fair to lump these three individual plaintiffs together and simply view them through Mr. Razak's lens. There's also Mr. Sherdood and Mr. Sabani and they need to stand or fall on their own record for summary judgment purposes. Okay that that that goes with that saying we're aware of that. Of course your honor. I do think that it's worth talking about some of the other Donovan factors taking up Judge Greenaway's invitation. Let's let's do that you've reserved four minutes in rebuttal. Let's let's do that on rebuttal but before you before we turn to hear from Mr. Pritchard a while back a few moments and minutes ago you said something to the effect that you have the utmost regard or respect for the Uber business model that's that's essentially what you said I didn't jot down the exact words. I use Uber probably three or four times a day so I I wonder do you have any doubt whatsoever that Uber's contractual intent was that they were utilizing the drivers as independent contractors and not as employees? I think Uber is keenly aware of federal and state labor law your honor and I think it is keenly aware the contract form is not binding. They are in a better position to tell you what they were thinking but I would be highly surprised if they didn't have their legal department drafting these agreements to maximize the odds that they could escape the strictures of the FLSA but it's clearly not possible. You chose the way to answer my question without responding to it really but doesn't that point to the difficulties here for us in the application of the six-factor test when confronted with a case that also involves a detailed written contract what are we to do with it? I think that you should take the contract into account if you're acting as the trier-of-fact in a bench trial and you should allow the contract to be presented to the jury as evidence but it can't be despised. So there's no role for the Court of Appeals on review to consider that contract the existence of that contract and the terms of that contract? I believe that the Court of Appeals can consider the existence of the contract and the contractual language within the Miller-Selatex framework and so if you believe that that's the single factor that tilts it over the line to say no reasonable jury on whichever Donovan factor you're considering probably control would be allowed to find dependents then I guess it can be taken into account in that context but if the Donovan factors are questions of fact which this court said in Dial America it cannot be dispositive because in Dial America. Dial America in one sense is not real helpful to us is it? Because it involved a trial. There was you know a little confusion as to what the district court said about what it was doing in a reference to summary judgment but in fact it was it followed a hearing it followed findings which and the Court of Appeals this court through Judge Becker said it was it it was a jury it was a trial. You're exactly right your honor and I actually think maybe making lemonade out of lemons but that makes it extremely helpful for us because at least the district court there just engaged in misproper labeling it called it a rule 56 when it should have been a rule 52. I don't know whether it helps you or hurts you but it does certainly have some effect with respect to how we review this case and how Dial America was reviewed because the court of it this court was looking at findings of fact. We'll have you back on. I just I understand that the Donovan factors are at least partially factual but haven't had didn't we say in Martin that the legal issue of the employment that of the employment status of workers is a legal one? You said that in the context of reviewing a bench trial decision your honor where of course the standard can be different and the findings of fact and conclusions of law that a district court makes under rule 52 is of course a legal conclusion and so that's what this court was reviewing. I'm aware of no precedent from this court or any other Court of Appeals that says the only way a jury gets the Donovan factors is through a special verdict form. They have to come back and say yes or no and the degree to which what each factor goes a particular way and then that gets handed to the judge to resolve the ultimate legal question as a matter of law and so this is a classic mixed question of law and fact and unless you're gonna be the first Court of Appeals to say that this has to be a special verdict form you can't have a general verdict. I think this has to go to a jury. Thank you. We'll have you back. May it please the court, good morning. I'm Rob Pritchard joined by Josh Vaughn on behalf of Uber Technologies Inc. and Gagin LLC. Although the determination of employee status certainly depends on subsidiary historical factual findings it is ultimately a question of law and this includes how to weigh the Donovan factors and to come to a conclusion about whether the totality of the circumstances weigh in favor of employee status or independent contractor status. Could you help me with the way in which your adversary has framed the question right so if I understood his argument when a Court of Appeals such as ours has a multiple factor test that when you go through when you have to go through a weighing process that should leave a court to say summary judgment is not appropriate so when your adversary looks at the six factors if I understand incorrectly there's a weighing there's there there's some argument to be made on one side there's some argument to be made on another that in his view that fact that that is the way that it's presented creates a genuine dispute which must go to trial and that's really I think that's the way he he framed it and I'd like you to specifically address whether the framing of the issue as thus is correct. It is incorrect there are three tiers that we need to consider there's at the top the ultimate legal question was the plaintiff an employee or an independent contractor it is undisputed and this court has made abundantly clear that this ultimately is a question of law with respect to the six Donovan factors that brings us to the I'd call it the second tier the second tier explores six factors but these to be clear are not elements we don't have to check six boxes they are not equally weighted where it has to be four to two in order to come to a conclusion ultimately Donovan Martin and all the other cases make clear that at the end of the day the question of law is based upon the totality of the circumstances and these six factors are merely aids in assessing the ultimate legal question and so my colleague is incorrect in suggesting that the six factors under Donovan are it themselves factual questions they are tools to reach the ultimate legal conclusion they are things that the courts should consider and take into account when reaching the ultimate legal conclusion and so it is not surprising to see cases granting summary judgment and this court affirming summary judgment when some of those factors are deemed to weigh in favor of employment status and others weigh in favor of independent contractor status because ultimately those tools are merely aids to the ultimate legal conclusion of whether under the totality of the circumstances as a matter of law the plaintiff is an employee or independent contractor so the mistake of my colleague is to assume that this what I call second tier this consideration of the six factors presents factual questions certainly how we view those six factors depends on the third tier the subsidiary historical facts these are the things that a jury gets to are there disputes is there a red light testimony and a green light testimony that a jury needs to actually consider when it's ascertaining the status of the individual in this case there are no genuine disputes as to any of the historical facts in response to your question directly challenging him to identify what is your best dispute where in the evidence is there a dispute of fact that a jury should be assigned to decide he immediately abandoned the historical facts and went up to the tier two to these factors and suggested that it was for the jury to weigh all the different factors it's very clear from this court's precedent dating back to battle America that the weighing of the factors and the assessment ultimately of the totality of the circumstances is a is for the court not for the jury and so when we presented our statement of undisputed fact wasn't there or at least doesn't plaintiff either plaintiffs plural or one of them suggest that uber does indeed restrict plaintiffs from driving for competitors wasn't there a dispute of fact as to that there's no dispute of fact with respect to that issue there's nothing in record of money say that Gagan restricted his company Mr. Sabani and the other two plaintiffs as well both admitted that they could do whatever they wanted to solicit other trips they could form their own companies they could advertise they could market they all admitted this and it's also true and by the way consistent with the contract which is relevant not only for its statement of intent that these individuals be treated as independent contractors but also its abdication of any ability to control the very thing that you're talking about which is that they can obtain rides through private efforts they can obtain rides through lift or black line there's abundant evidence in the record that even Mr. Sabani's company Fremo had private clients that they obtained through their own private marketing efforts that for one of the helpers one of the drivers under Fremo was his exclusive way of generating revenue he did not drive trips that were identified through the use of the uber app so the actual testimony in the record from all three plaintiffs Mr. Sabani included is that there were no restraints on their ability to engage in other activities in fact while they were online on the uber app awaiting trip requests they were also engaged in marketing activities with respect to their other businesses you heard my my questions to Mr. Keller regarding the presence of a contract in these cases and if there's one difficulty that multi-factor tests present to a court it is that it becomes harder to extract some kind of a rule singular for deciding a case in response to my question Mr. Keller consistent with my own research was not able to provide me with a rule or with guidance as to just what we're supposed to do with the fact of the existence of that contract let alone its content what can you add anything to that discussion sure many of the cases that talk about contracts in an independent contractor dispute come to the conclusion that we can all agree with which is the mere fact that the contract says this is an independent contractor relationship is not just positive the parties can't contract themselves away from we all know that as I said to Mr. Keller the problem is that doesn't get us very that's right and that's why the district court very appropriately noticed it when when stating that same legal observation that it's not just that the contract says that these folks are which are relevant to the Donovan factors the control for example the fact that the contract specifically says that you can provide transportation services using leads generated outside the uber app that you can negotiate the price that the price set within the uber app is the default but that if the driver wants to negotiate that price down the drivers free to do that that there is no required limitation on where the driver goes while they're online they can go anywhere they want the app only has functionality for riders within the Philadelphia metropolitan area of is this this aspect of the app so sure if if one of these drivers went to Nebraska they're unlikely to get any trip request but they're not restricted in going either to Nebraska or overseas as Mr. is opted or anywhere within the Philadelphia metropolitan area they can go wherever they want and that's set forth in the contract so the contract does a whole lot more than just say you are independent contractors and confirms the party's mutual intent to have that type of relationship the contract goes into great detail that these drivers can go online and offline whatever they want they can go wherever they want they can negotiate the price down they can cancel trips they can do all of these things and those those indicia of lack of control are not only a matter of contract between the driver and the company but they're also reflected in the undisputed and admitted facts within the record what what my colleague tends to do is he tends to confuse the need to identify a genuine dispute of material fact with the ability on his part to use disputed rhetoric and employment sounding terms to describe those undisputed facts so let's speak specifically okay so I'm willing to accept for the purposes of argument the triumvirate that you've described as the to analyze this right so take if you will your your your third description which you call the historical factual determinations right and as I understand it that's the only place where genuine disputes lie right so from your perspective this is a hypothetical what is a genuine dispute that in this controversy that should be left for that could be left because I know you say that could be left for the jury's consideration this is gonna sound evasive I'm sorry but there are no genuine disputes in fact well I'm gonna use one straight from the brief I'll use one straight from the brief plaintiff says at page 10 of their appellant's opening brief the drivers who repeatedly cancel trips after accepting them are fired know what they're doing here they're using employment sounding terminology fired to try to persuade this court that these people look like employees on the same page they refer to uber suspending drivers other employment sounding term who fail to accept and would your term be deactivated no my term is these are not supported by the record evidence so we look to page 10 where appellants say the drivers who fail to or who cancel trips after accepting them are fired they cite to page 733 of the of their appendix if you look at page 733 of their appendix what you see is an email from uber to mr. result notifying him that they've noticed that on his rider account his passenger account the one you and I might use he was repeatedly going online as a passenger asking for trips seeing the trip get accepted and then canceling the trip and he was doing so according to the email a normally high number of times and continuously doing so this this evidence actually has nothing to do with mr. result as a driver it has to do with him as a rider abusing the app and sending all these drivers off to go pick him up only to find out that the trip was canceled by mr. result so that's the evidence so they take this in their brief they try to persuade you that this sounds like an employment relationship but when they point to the evidence they're not actually pointing to any evidence that supports their own rhetoric with respect so so your point is that presents a question that the jury would have to determine it presents one side this creates firing the other side is no it doesn't you put on testimony of what actually happened and the jury then determines what as assuming this was material I get it that it might not be in the scheme of things for assuming it was material and that that's a question of fact and when you have control as a you present some facts that way in favor of saying there is no control they have some facts that way in favor that there is that there is control that that's not the presentation of genuine disputes as to material fact well my point with that example is that there's not even a genuine dispute of fact not forgetting material for a minute there was no dispute as to what the factual record was there the evidence mr. result even admitted in his deposition that he personally as a driver canceled between a hundred and a thousand trips he couldn't remember for sure with no consequence the record evidence is that there was no consequence for drivers canceling trips and so you were supposed to answer my hypothetical so let's assume that this evidence actually supported the rhetoric in a pellets free then we would have to ask ourselves is this a material fact and when you are looking at six different factors and a answer that this is not a material fact did one apparent dispute that kept catching my attention because that the plaintiffs mentioned it a few times in the briefs and as far as I could tell uber didn't respond to it was and this goes to it's part of control the assertion that uber black drivers are given us a limited territory and I think your Nebraska example maybe just answered it your is your answer that it's not a territory is just the scope of rides that you're able to get in a particular market if you want to work in both Philadelphia and Nebraska can you sign up for both both of those apps for and so the and this is another perfect example just like their misuse of the term firing when they refer to territory look at the record that they say they say to two things they say to the contract itself which includes a within which the Apple function and in this case we're generally speaking about the Philadelphia metropolitan market so the the undisputed record is that you could even leave the market and maybe not all the way to Nebraska but you could be on the outside of the market and if there's a rider within the market who can use the app and they request a trip and you're the closest driver you'll still get that trip request and you can come into the territory and take the trip what I'm talking about so that's that's one evidence it's just a contract that says that there's a territory it doesn't even say what the other evidence that they say to you is an issue in which mr. Sabani left his phone online in the airport geofence and there's a lot of discussion in the record about the special requirements at airports designed to prevent improper solicitations at baggage claim etc perfectly consistent with PPA regulations and it's it's appropriate but he left his phone inside the airport and went home which was essentially a fraud on the on the other drivers who were waiting for their turn to receive a trip request and so he was told you can't be in the airport for another for him two weeks now that actually didn't restrict his ability to be a transportation provider anywhere else using the uber app or even within the airport for some other company for his private business so we can't actually control where he engages as a Fremo driver which is really what he is he can go anywhere he wants within Philadelphia they can go anywhere they want we can't send them and say you have to go to the airport we can't even tell them to go online we can't schedule them we can't tell them to stay online we can't tell them to accept trips we can't prevent them from canceling trips they can go anywhere they want they can go offline whenever they want they don't have to accept trips which brings us to the suspension fact where they use the suspension rhetoric all that means is if you don't accept three trips in a row you're moved offline you can go right back online if you want to we just assume after three non-acceptances that maybe you're not actually interested in providing trips so as a system integrity measure undisputed fact we take you offline the point is all of these facts are undisputed there's no historical fact regarding territory that is actually in dispute the question for the court as a legal matter is whether that matters at all and so back to your point about materiality even if we could come up with a genuine dispute of an historical fact we would still have to ask ourselves if viewing that fact in a light most favorable to employee status would tip the balance in the weight of all of the other undisputed facts that demonstrate independent contractor status so let's assume that one of these facts actually did include a red light green light disputed testimony the role of the court in that scenario is to view that fact as if it were found by the jury to be favorable to the plaintiff's point of view as a non-moving party and then to engage in the legal duty of evaluating those the entire record the totality of the circumstances with this new fact flipped in favor of the plaintiff and if that flipping of that one fact does not change the court's legal view of the plaintiff's status as an independent contractor then it's not a material fact in that context because it doesn't change the outcome a dispute a fact is only material if resolving it in favor of the non-moving party is a non-moving party there could in theory be disputed facts in this record the appellants on appeal it was their duty in their opening brief to point to concrete evidence in the record from which this court could look at the record and say okay I see a red light green light dispute of fact now the court would have to take that dispute look at it in a light most favorable to the plaintiff and ask itself viewing that one fact in a different way does that change the outcome and if the answer is that it does not change the court should confirm the district court despite looking at a couple of facts differently the problem in this case for appellants is that in their entire opening brief they do not point to any evidence in the record from which a reasonable fact finder could look at the evidence and conclude that the fact was assessed by the district court in an improper way but for those reasons I would ask the court to affirm the judgment of the district court thank you very much mr. Pritchard will have mr. Keller back on rebuttal thank you your honors I'd like to start with some sage words from a colleague in a sister circuit if we are to have multiple factors we also should have a trial an approach in which no ascertainable legal rule determines a unique outcome is one in which the trier of fact plays the principal part that there is a legal overlay to the factual questions does not affect the role of the trier of fact the drawing of inferences from subordinate to ultimate facts is a task for the trier of fact that was judge Easterbrook in the Loretson concurrence he was right then and I think that that's still controlling now I like my friends nomenclature where he talked about historical facts and then secondary facts read dial America that is controlling precedent that summary judgment is inappropriate in cases like this because the Donovan factors are questions of fact for the jury and I agree with my colleague that a lot back he he gives his concurrence rather tongue-in-cheek by reference to economic reality and how he was pleased that in fact not making decisions on the basis of economic reality and not economic fantasy and to your point he goes on to say reality encompasses millions of facts that's exactly right your honor and if the court wanted to go in bonk and take up judge Easterbrook's call to scuttle the entire Donovan framework and go to a bright line rule based on the text and purposes of the FLSA we'd welcome that approach but assuming the court is not going to do that and certainly as a panel you cannot you're bound by the Donovan factors judge Easterbrook was also right that the drawing of inferences from subordinate to ultimate facts is something we classically leave to a jury you would agree would you not that we would not have to go in bonk if we indeed supplemented the six factors of Dial America which we adopted from the Ninth Circuit and suggested or declared that there be some kind of weight given to an express or written contract between parties you could of course do that your honor I don't see any it was not conflict with our existing case law that that would be in tension with your existing cases which have already dealt with contract language that disavows an employee-employer relationship says it's not dispositive and still allows what I'm saying I understand not dispositive you yourself could not answer my question as to what we do with that factor well your honor I can we haven't come to grips with that have we I I will try now to answer your question in a in a better way for my previous answer which is to say the contract is relevant it can be taken into account I'm not sure there's any basis and certainly my adversary has not requested that the court announce a new rule of law saying that in weighing all of these factors extra weight is going to be given to the contract formalities and that that weight is going to prove dispositive in this case you're free to do it but I don't see any basis in the text or history of the FLSA or the Donovan factors and the analysis interpreting it that would allow the court to say more about contract formalities in this particular case as opposed to every other where employees have tried to or employers have tried to disavow an employee relationship and again I would urge the court I'm sure you have it in front of you as well to look at dial America which states quite clearly that the Donovan factors are questions of fact that's at 757 F second 1381 and footnote four and so again your honors look at the drawing of inferences that occurred here from the district court my colleague essentially said the Donovan factors are a non-exhaustive set of tools the district court doesn't even have to rely on them when it reaches the ultimate question of employee status well not if that's true I think the opposite extreme occurs summary judgment should be granted in every case so long as there's not a dispute of historical fact that's an overly cramped view of the jury's role that has I believe in any other context no basis in law you don't say that juries are only allowed to fight about green light yellow light the jury's classically get to resolve inferences and again I'd point to the fact that the district court felt comfortable not just issuing findings but speaking about the degree to which certain factors went our way versus Uber's way think about what that means in the summary judgment context there's a spectrum of possibilities as to each factor strong for uber to strong for the drivers the only way that you could say for example on the sixth Donovan factor judge green away that it slightly favors the drivers under a proper cell attacks analysis is no reasonable jury could find that the factor slightly favors uber and no reasonable jury could find that the factor moderately favors us the only thing a reasonable jury could do along this long continuum of possibilities is come back because the historical facts aren't disputed and say that the factor slightly favors us again there is no explanation for this in the district courts analysis correctly then every each of the six factors would have to go through the following analysis control permanence at all are all I'm sorry correct questions in fact right and it is because of that that we then would look at we want a jury to look at what factors have been presented on uber side what factors on raise that get all side and then the jury would say yeah this is control that's that's what you foresee that is correct your honor and that's how I think jury trials in the FLSA context have been conducted throughout the country and as I previously remarked juries almost never get special verdict forms in these cases they don't have to come back to the district court judge and say we found these four factors one way substantially moderately and slightly we found these other two factors this way now you go back into your chambers and issue the decision as a matter of law these are almost always general verdict cases that's because mixed questions of law in fact goes to the jury's and so just as your honor was pointing out in the opening that sometimes loose language is used in the cases at the district court and the Court of Appeals level yes the ultimate conclusion of employee status can be thought of as a question of law it's about the words in a statute but it's a mixed question of law in fact goes to the jury thank you I do have one last question most of the cases we're looking at involve pickle pickers the instances where workers were necessarily working in a geographic in the Jameish geographic area judge Baleson correctly pointed out that you know this is the gig economy that these drivers many of them that driving for uber it's a side hack how are we so how do you suggest that we interpret our the case law in this in this new circumstance or is it or does it map directly one on the new scenario that's important and useful question your honor a couple of responses first not to dodge your question but as to these three plaintiffs this is not some side gig this is not a couple of bucks of extra income while they're going to grad school at night these are people who rely on uber for the overwhelming majority of their income to put food on their table so with respect to these three plaintiffs that analysis doesn't apply I get the broader point though that the economy is certainly changing rapidly and there are lots of people even though it's not in the record here who are using uber as a side gig and perhaps the analysis would be different as to them but I would note that since the Roosevelt administration there's been lots of technological change and companies have been adjusting the contribution of labor into their workforce and the returns that come from labor we've gone through decades of that and so it's easy to fall in the trap of thinking we're in this great technological moment and so much is happening now and so perhaps we need new rules of law in order to address the situation but technology has been changing for a long time and to the extent that there's a policy reason to treat the gig economy as different from every other business that has been technologically adjusting for the last 70 years that's something that's better taken up with an article one solution as opposed to one from article three but my question really doesn't go to technology it goes to subjective expectations and the relationship is and ordinarily you look to a contract to see what those subjective understandings are but if but if both parties go into this relationship with a with a different understanding than the meat boners or the pickle pickers had should that be relevant I don't think that there's any precedent saying that the subjective understanding of the parties is something that should get more weight the parties may well want by contract and I know I'm out of time but we don't have to talk about the subjective understanding even if we simply look to the contractor do we I think that the contract manifests the objective understanding based on the written text but but my point was going to be you know the reason the minimum wage exists is to provide a bare level of income that's a policy argument as well I would like to know as a matter of practice if an entrepreneur can craft a business model upon which he can have some measure of confidence going forward if these cases are going to be decided based upon the subjective expectations of various workers out there or being a part-timer who's going to school another who has no other opportunities available and is trying to make a full-time occupation out of this how can the business owner craft a business model that is in any way possible but presenting possible expectations for him if there is that much variance out there your honors question is also a good one and indeed when we're operating in the realm of standards as opposed to bright line rules there's going to be a zone of uncertainty and that means both sides are taking some risk but let me make it very concrete in this case uber could have a very different business model that would relinquish a lot of control and still add value in the marketplace for example you could log on to the app and get to choose your riders and see the different star ratings and a rider that has a cleaner car and a better history and more positive reviews or no more know where you're taking your rider you would know exactly where you're taking them and you'd be able to connect directly with the rider it could be sort of like a true yellow pages analogy uber's chosen not to do it probably for good business reasons but it is therefore subjected itself to the risk of this standard thank you mr. Keller thank you thank you your honor to both of counsel in what is a very interesting case and one that the panel will enjoy taking under advisement